**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ROSE MICHEL and MERCHELEY PETIT-FRERE,**<br>***on behalf of themselves and others similarly situated,***<br><br>**Plaintiff,**<br><br>**- against -**<br><br>**LIV RESTAURANT LLC, d/b/a TEN'S CABARET, and EDGAR MCLAUGHLIN,**<br><br>**Defendants.** | **Civil Action No:**<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiffs ROSE MICHEL and MERCHELEY PETIT-FRERE ("Plaintiffs"), individually and on behalf of all others similarly situated, upon personal knowledge as to themselves, and upon information and belief as to other matters, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, LIV RESTAURANT LLC d/b/a TEN'S CABARET (hereinafter, "Corporate Defendant"), and EDGAR MCLAUGHLIN (hereinafter, "Individual Defendant" and together with Corporate Defendant, "Defendants") and alleges as follows:

## INTRODUCTION

1. Plaintiffs bring this action on behalf of themselves and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) unpaid wages for all hours worked, (4) unlawfully deducted wages and gratuities, (5) unlawfully retained tips and gratuities, (6) liquidated damages, and (7) attorneys' fees and costs.

2. Plaintiffs also bring this action on behalf of themselves and similarly situated workers pursuant to the New York Labor Law ("NYLL") Article 6, §§ 190 et seq., and Article 19, §§ 650 et seq., the supporting New York State Department of Labor Regulations, and Federal Rule of Civil Procedure 23 ("Rule 23"), seeking from Defendants: (1) unpaid wages, (2) unpaid minimum wages, (3) unpaid overtime wages, (4) unpaid spread-of-hours premiums, (5) unlawfully retained tips and gratuities, (6) unlawful wage deductions, (7) statutory penalties, (8) liquidated damages, and (9) attorneys' fees and costs.

3. Plaintiff Rose Michel additionally brings claims pursuant to the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq. ("NYCHRL"), seeking from Defendants: (1) damages arising from Defendants' discriminatory treatment of her on the basis of race and color, (2) damages arising from Defendants' retaliatory acts against her in response to her opposition to the discriminatory treatment, (3) compensatory damages, (4) punitive damages, and (5) attorneys' fees and costs.

4. Plaintiff Mercheley Petit-Frere similarly brings claims pursuant to the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq. ("NYCHRL"), seeking from Defendants: (1) damages arising from Defendants' discriminatory treatment of her on the basis of race and color, (2) damages arising from Defendants' failure to provide her with a reasonable accommodation, (3) compensatory damages, (4) punitive damages, and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

6. This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

7. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

***Plaintiffs***

***ROSE MICHEL***

9. Plaintiff Rose Michel is an adult who resides in Monmouth County, New Jersey.

10. Plaintiff Michel was at all relevant times a covered employee within the meaning of the FLSA, NYLL, NYSHRL and NYCHRL.

11. Plaintiff Michel retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and have agreed to pay the firm a reasonable fee for its services.

***MERCHELEY PETIT-FRERE***

12. Plaintiff Petit-Frere was at all relevant times a covered employee within the meaning of the FLSA, NYLL, NYSHRL and NYCHRL.

13. Plaintiff Petit-Frere retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and have agreed to pay the firm a reasonable fee for its services.

***Defendants***

***LIV RESTAURANT LLC***

14. Corporate Defendant LIV RESTAURANT LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business and an address for service of process located at 2945 Arthur Kill Road Staten Island, NY 10309.

15. At all relevant times, LIV RESTAURANT LLC has done business as Ten's Cabaret.

16. At all relevant times, LIV RESTAURANT LLC had an annual dollar volume of sales in excess of $500,000.

17. At all relevant times, LIV RESTAURANT LLC employed employees who handled, sold, or otherwise worked on goods and materials that had moved in or been produced for interstate commerce.

18. LIV RESTAURANT LLC is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiffs and similarly situated employees.

19. LIV RESTAURANT LLC is a covered employer within the meaning of the NYSHRL and NYCHRL, and, at all relevant times, has employed Plaintiffs.

20. At all relevant times, LIV RESTAURANT LLC has maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

21. LIV RESTAURANT LLC applies the same employment policies, practices and procedures to all entertainers at Ten's Cabaret.

***EDGAR MCLAUGHLIN***

22. Upon information and belief, Individual Defendant EDGAR MCLAUGHLIN is and/or was, during the relevant period, a principal, manager, owner, and/or operator of Ten's Cabaret.

23. Plaintiffs knew EDGAR MCLAUGHLIN by the name "Eddie."

24. Upon information and belief, EDGAR MCLAUGHLIN is the individual known to Plaintiffs as "Eddie," who was actively involved in the day-to-day management and operation of Ten's Cabaret during the relevant period.

25. Upon information and belief, filings submitted to the New York State Liquor Authority during the relevant period identified EDGAR MCLAUGHLIN as a principal, manager, owner, and/or person associated with the ownership, management, or operation of Ten's Cabaret.

26. At all relevant times, EDGAR MCLAUGHLIN had the power to control significant aspects of Ten's Cabaret's day-to-day operations, including personnel, payroll, scheduling, compensation, employee supervision, discipline, workplace rules, employment records, and workplace policies.

27. At all relevant times, EDGAR MCLAUGHLIN had the power to hire and fire employees, set or approve employee work schedules, determine or approve employees' rates and methods of pay, supervise and discipline employees, maintain or control employment and payroll records, and otherwise control the terms and conditions of Plaintiffs' and similarly situated employees' employment at Ten's Cabaret.

28. At all relevant times, EDGAR MCLAUGHLIN supervised, directed, disciplined, and/or controlled Plaintiffs and similarly situated employees, and exercised day-to-day authority over managers, supervisors, bartenders, dancers, and other employees at Ten's Cabaret.

29. At all relevant times, EDGAR MCLAUGHLIN had authority over personnel decisions, payroll decisions, and employment policies, practices, and procedures at Ten's Cabaret.

30. At all relevant times, EDGAR MCLAUGHLIN had the power to prevent, correct, or stop the unlawful pay practices and discriminatory employment practices alleged herein.

31. At all relevant times, EDGAR MCLAUGHLIN was an employer of Plaintiffs and similarly situated employees within the meaning of the FLSA and NYLL, and an employer and/or person with ownership or managerial authority over the Corporate Defendant within the meaning of the NYSHRL and NYCHRL.

32. At all relevant times, Defendants were and continue to be employers within the meaning of the FLSA, NYLL, NYSHRL and NYCHRL.

## FLSA COLLECTIVE ACTION ALLEGATIONS

33. Plaintiffs bring the First Cause of Action, the FLSA claims, on behalf of themselves and all similarly situated current and former non-exempt employees employed as entertainers/dancers, bartenders or servers at Ten's Cabaret, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

34. At all relevant times, Plaintiffs and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiffs and FLSA Collective Members the full minimum wage for all hours worked up to forty (40) per workweek, overtime wages for all hours worked in excess of forty (40) per workweek; and for unlawfully deducting from Plaintiffs and FLSA Collective Members' wages and unlawfully retaining a

portion of tips that Plaintiffs and FLSA Collective Members earned from customers. Plaintiffs' claims stated herein are essentially the same as those of the other FLSA Collective Members.

35. All of the work that Plaintiffs and FLSA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and FLSA Collective Members have performed.

36. Defendants are aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

37. For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendants' records.

## NEW YORK CLASS ACTION ALLEGATIONS

38. Plaintiffs bring the Second Cause of Action, the NYLL claims, pursuant to Rule 23, on behalf of themselves and a class of persons consisting of all current and former non-exempt employees employed as entertainers/dancers, bartenders or servers at Ten's Cabaret, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter (the "Class" or "Class Members").

39. Excluded from the Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

40. The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendants' payroll and personnel records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also

determinable from Defendants' records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendants' records. Notice can be provided by means permissible under Rule 23.

41. The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

42. Plaintiffs' claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

43. Plaintiffs and Class Members were subject to the same practices of Defendants, as alleged herein, of (i) failing to pay wages, (ii) failing to pay the New York State minimum wage, (iii) failing to pay overtime premiums (iv) failing to pay spread-of-hours premiums, (v) unlawfully retaining entertainers' tips, (vi) making improper wage deductions from wages (vii) failing to provide proper wage notices, and (viii) failing to provide proper wage statements, in violation of the NYLL.

44. Plaintiffs and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices and patterns of conduct. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

45. Plaintiffs and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures under the NYLL.

46. Plaintiffs are able and willing to fairly and adequately protect the interests of Class Members and have no interests antagonistic to Class Members.

47. Plaintiffs are represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

48. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

49. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

50. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

51. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. This is particularly true of entertainers who work for gentleman's clubs, such as Ten's Cabaret, who have traditionally been an exploited workforce. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

52. Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiff and individual Class Members and include, but are not limited to, the following:

a. Whether Defendants employed Plaintiffs and Class Members within the meaning of the NYLL;

b. Whether Defendants paid Plaintiffs and Class for all hours worked;

c. Whether Defendants paid Plaintiffs and Class Members at the lawful minimum wage rate;

d. Whether Defendants improperly deducted wages from Plaintiffs and Class Members' pay;

e. Whether Defendants paid Plaintiffs and Class Members the spread-of-hours premium, as required by the NYLL;

f. Whether Defendants misappropriated tips from Plaintiffs and Class Members by keeping a portion of the tips they earned from customers;

g. Whether Defendants failed to furnish Plaintiffs and Class Members with proper wage notices, as required by the NYLL; and

h. Whether Defendants failed to furnish Plaintiff and Class Members with proper wage statements with every payment of wages, as required by the NYLL.

## STATEMENT OF FACTS

### Wage and Hour Allegations

53. Plaintiff Mercheley Petit-Frere was employed by Defendants as an entertainer at Ten's Cabaret, a gentleman's club located at 2945 Arthur Kill Road, Staten Island, New York 10309, from approximately July 2024 until approximately January 2025.

54. Thereafter, from approximately January 2025 until on or around July 28, 2025, Plaintiff Mercheley Petit-Frere was employed by Defendants as a bartender at Ten's Cabaret.

55. As an entertainer, Plaintiff Petit-Frere usually worked at least five (5) days per week, from Friday to Tuesday. On a typical workday, Petit-Frere generally arrived around 6:00 p.m. and continued working until at least 3:00 a.m., without breaks, for a total of at least forty-five (45) hours per week.

56. Despite the fact that Defendants exercised significant control over the manner and means of her work, as an entertainer, Defendants misclassified Plaintiff Petit-Frere as an independent contractor and she was *not paid any wages by Defendants*. Instead, Plaintiff Petit-Frere was required to depend entirely on amounts paid by customers for dances and tips.

57. Throughout the period Petit-Frere worked as a dancer, Defendants exercised significant control over the means and manner in which entertainers work.

58. Specifically, during her employment as an entertainer, Defendants (i) required Plaintiff Petit-Frere and other entertainers to perform stage sets every hour on the half hour; (ii)

required Plaintiff Petit-Frere and other entertainers to work a minimum number of shifts per week, and heavily controlled their schedules; (iii) controlled when entertainers could arrive and leave from work; (iv) required Plaintiff and entertainers to speak with customers when not on stage, and (iv) when on stage, choose what music was played, regulated dancing styles, and imposed rules on how long entertainers had to be on stage

59. In addition to failing to pay wages during the period Petit-Frere worked as an entertainer, Defendants also improperly deducted from her pay and gratuities by imposing house fees on Plaintiff and other entertainers based on arrival time, with the amount of the fee increasing the later an entertainer arrived, and with higher fees imposed on weekends. Typical house fees ranged from around $50 to $100 per day, depending on when the entertainer arrived. Defendants further imposed additional financial penalties if entertainers left work early.

60. Moreover, Defendants unlawfully required Plaintiff Petit-Frere and other entertainers to remit a portion of the amounts paid by customers for lap dances, semi-private dances, VIP dances, and private dances. Specifically, dancer were required to pay the house $10 per lap dance, and 50% of all VIP service fees earned. Defendants failed to disclose to customers that service fees were not gratuities.

61. Even in weeks where Plaintiff's pay was above the statutory minimum, the above-described wage deductions/kickbacks caused Plaintiff's effective hourly rate to fall below the applicable state and federal minimum wage rate.

62. As an entertainer, despite working over forty hours per week, Defendants failed to pay Plaintiff Petit-Frere any overtime premiums.

63. As a bartender, Plaintiff Petit-Frere typically worked five (5) days per week. During this period, Plaintiff worked three shifts per week from approximately 4:30 p.m. until

approximately 5:00 a.m,, and two shifts per week from around 10:00 p.m. until around 5:00 a.m. Plaintiff Petit-Frere thus worked at least fifty (51.5) hours per week.

64. Throughout her employment as a bartender, Plaintiff Petit-Frere was paid at a straight hourly rate of approximately $10.00 per hour.

65. As a bartender, Plaintiff Petit-Frere was not paid at the applicable New York minimum wage rate, and did not receive overtime compensation at one and one-half times her regular rate of pay for hours worked in excess of forty (40) in a workweek.

66. Plaintiff Rose Michel was employed by Defendants as a bartender at Ten's Cabaret from approximately February 2025 until on or around August 15, 2025.

67. Plaintiff Michel typically worked five (5) nights per week, from Thursday through Monday, from 5:00 p.m. to 5:00 a.m., without breaks, for a total of at least sixty (60) hours per week.

68. Throughout her employment, Plaintiff Michel was paid at a straight hourly rate of approximately $10.00 per hour, plus tips, for all hours worked.

69. Plaintiff Michel was not paid at the applicable New York minimum wage rate, and did not receive overtime compensation at one and one-half times her regular rate of pay for hours worked in excess of forty (40) in a workweek.

70. Plaintiffs and other bartenders/servers were also not paid for all hours worked, including time spent performing closing and cleaning work after they had been clocked out.

71. Defendants required Plaintiffs and similarly situated bartenders to clock in and out using a fingerprint-based timekeeping system.

72. Defendants, through their managers and supervisors, were able to manipulate the timekeeping system and alter or control the hours recorded for Plaintiffs and similarly situated employees.

73. Defendants, through their managers and supervisors, regularly clocked bartenders out at approximately 4:00 a.m., when the club closed, even though bartenders were required to continue working after that time.

74. After being clocked out, Plaintiffs and similarly situated bartenders/servers were required to continue performing closing, cleaning, restocking, and related work until approximately 5:00 a.m. or later. Defendants through their managers and supervisors additionally manipulated Plaintiffs and similarly situated employees' timesheets so that they were only paid for their first forty hours of work each week.

75. Defendants unlawfully deducted amounts from Plaintiffs' and similarly situated employees' wages and tips for alleged register shortages, inventory discrepancies, and other business expenses.

76. Defendants' deductions from Plaintiffs' and similarly situated employees' wages and tips were not for the benefit of Plaintiffs or similarly situated employees.

77. Throughout their employment, Plaintiffs and similarly situated bartenders regularly performed non-tipped work, including cleaning, restocking, rearranging bottles, wiping down the bottles, preparing the bar, and other such side work.

78. Plaintiffs and similarly situated bartenders regularly spent more than two (2) hours per workday and/or more than twenty percent (20%) of their workday performing non-tipped work.

79. Defendants were not entitled to take a tip credit toward Plaintiffs' wages because Defendants failed to provide Plaintiffs and similarly situated employees with proper notice of any tip credit, and due to violations of the 80-20 rule.

80. Defendants were further not entitled to take a tip credit because Defendants retained portions of Plaintiffs' and similarly situated employees' tips and failed to maintain accurate records of tips earned.

81. Defendants failed to pay Plaintiffs and similarly situated employees the applicable minimum wage for all hours worked.

82. Defendants failed to pay Plaintiffs and similarly situated employees overtime compensation at one and one-half times their regular rate of pay for hours worked in excess of forty (40) in a workweek.

83. Defendants failed to pay Plaintiffs and similarly situated employees for all hours worked.

84. Defendants failed to pay Plaintiffs and similarly situated employees spread-of-hours premiums for workdays that exceeded ten (10) hours per day.

85. Defendants failed to keep, record, and/or maintain accurate records of the hours worked by Plaintiffs and similarly situated employees.

86. Defendants failed to keep, record, and/or maintain accurate records of the wages paid to Plaintiffs and similarly situated employees.

87. Throughout their employment, Plaintiffs did not receive notices of pay rate or pay day from Defendants, as required under the NYLL.

88. Throughout their employment, Plaintiffs did not receive wage statements from Defendants, as required under the NYLL.

89. Defendants' failure to provide Plaintiffs with accurate wage notices deprived Plaintiffs of information concerning their lawful rates of pay, including the minimum wage, overtime rate, and any allowances or credits claimed by Defendants against the applicable minimum wage.

90. As a result of Defendants' failure to provide accurate wage notices, Plaintiffs were unable to readily determine whether Defendants were compensating them at the rates required by law and whether Defendants were lawfully claiming any tip credit or other allowance against their wages.

91. Defendants' failure to provide Plaintiffs with accurate wage statements similarly deprived Plaintiffs of contemporaneous information concerning, among other things, the number of hours for which they were being paid, their regular and overtime rates of pay, their gross wages, and deductions taken from their compensation.

92. Because Defendants failed to provide accurate wage statements, Plaintiffs were unable to readily identify and verify discrepancies between the hours they actually worked and the hours for which they were compensated, including Defendants' failure to compensate Plaintiffs for off-the-clock work and overtime hours.

93. Defendants' failure to provide accurate wage notices and wage statements also impaired Plaintiffs' ability to identify and challenge unlawful deductions from their wages and gratuities and to determine the full amount of wages that Defendants failed to pay them.

94. As a direct result of Defendants' failure to provide the information required by NYLL §§ 195(1) and 195(3), Plaintiffs were hindered in their ability to identify, understand, and timely challenge Defendants' unlawful compensation practices, thereby causing Plaintiffs concrete financial harm in connection with the underpayment and withholding of wages alleged herein.

95. Based on their observations and conversations with other employees at Ten's Cabaret, Plaintiffs believe that FLSA Collective Plaintiffs and Class Members were subject to the same unlawful policies and practices.

Discrimination and Retaliation Allegations for Petit-Frere

96. Plaintiff Petit-Frere is a Black woman.

97. Throughout her employment with Defendants, Plaintiff Petit-Frere was subjected to discriminatory treatment based on her race and color.

98. Defendants, through their managers and supervisors, including the general manager George, subjected Plaintiff Petit-Frere and other Black employees to different terms and conditions of employment than similarly situated non-Black employees.

99. For example, George repeatedly criticized Plaintiff Petit-Frere's hair and hairstyles, including her braids and natural hairstyles, and stated that her hair did not "fit the club's look."

100. George further told Plaintiff Petit-Frere that she needed to wear a wig or straighten her hair.

101. Defendants did not impose the same appearance requirements on similarly situated White and Hispanic employees, who were permitted to wear their hair in any style they chose.

102. Defendants' comments and rules concerning Plaintiff Petit-Frere's hair and hairstyles were based on traits and characteristics closely associated with race and color.

103. Plaintiff Petit-Frere was therefore treated less well than similarly situated non-Black employees because of her race and color.

104. In or around July 2025, Plaintiff Petit-Frere's brother passed away.

105. Following the death of her brother, Plaintiff Petit-Frere informed George that she was experiencing a mental health crisis and needed a brief leave of absence to grieve, address her mental health, and seek treatment.

106. Plaintiff Petit-Frere requested only a short leave of approximately one to two weeks.

107. Plaintiff Petit-Frere's request for a short medical leave was reasonable and would not have imposed any undue hardship on Defendants.

108. Rather than grant Plaintiff Petit-Frere's request, or engage in any good faith interactive process concerning the requested accommodation, George told Plaintiff Petit-Frere that she was "hurting the business."

109. Defendants did not request additional information from Plaintiff Petit-Frere, did not discuss any alternative accommodation with her, and did not make any good faith effort to accommodate her need for a brief leave of absence.

110. Instead, shortly after Plaintiff Petit-Frere requested a brief leave of absence, Defendants terminated her employment on or around July 28, 2025.

111. Defendants terminated Plaintiff Petit-Frere's employment because of her need for a reasonable accommodation, her request for a reasonable accommodation, and/or because Defendants regarded her need for medical leave as a burden on the business.

112. Defendants' failure to accommodate Plaintiff Petit-Frere, refusal to engage in the interactive process, and termination of her employment caused Plaintiff Petit-Frere to suffer lost wages, emotional distress, humiliation, embarrassment, and other damages.

<u>Discrimination and Retaliation Allegations for Michel</u>

113. Plaintiff Michel is a Black woman.

114. Throughout her employment with Defendants, Plaintiff Michel was subjected to discriminatory treatment based on her race and color.

115. Defendants, through their managers and supervisors, including the general manager George, subjected Plaintiff Michel and other Black employees to different terms and conditions of employment than similarly situated non-Black employees.

116. For example, George repeatedly criticized Plaintiff Michel's hair and hairstyles, including her braids and natural hairstyles, and stated that her hair did not "fit the club's look."

117. George further told Plaintiff Michel that she needed to wear a wig or straighten her hair.

118. Defendants did not impose the same appearance requirements on similarly situated White and Hispanic employees, who were permitted to wear their hair in any style they chose.

119. Defendants' comments and rules concerning Plaintiff Michel's hair and hairstyles were based on traits and characteristics closely associated with race and color.

120. Plaintiff Michel was also subjected to less favorable treatment than similarly situated non-Black employees in other respects.

121. For example, Plaintiff Michel was prohibited from sitting during slow periods, while similarly situated White and Hispanic employees were permitted to sit during slow periods.

122. Defendants also accused Plaintiff Michel of being intoxicated on multiple occasions without any basis.

123. Defendants did not similarly accuse similarly situated White and Hispanic employees of being intoxicated under the same or similar circumstances.

124. On one occasion, when Plaintiff Michel attempted to explain a register discrepancy, George publicly accused her of being "incompetent."

125. Plaintiff Michel protested that she was being singled out and treated differently than similarly situated non-Black employees.

126. Plaintiff Michel's complaint constituted protected activity under the NYSHRL and NYCHRL.

127. Rather than investigate Plaintiff Michel's complaint or take any action to stop the discriminatory treatment, Defendants dismissed her concerns.

128. Approximately one week after Plaintiff Michel complained that she was being singled out and treated differently, Defendants terminated her employment.

129. After terminating Plaintiff Michel's employment, Defendants replaced her with a Hispanic employee.

130. Defendants terminated Plaintiff Michel's employment because of her race and color and/or because she complained about and opposed discriminatory treatment.

131. Defendants' discriminatory and retaliatory conduct caused Plaintiff Michel to suffer lost wages, emotional distress, humiliation, embarrassment, and other damages.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

132. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

133. The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiffs and FLSA Collective Members.

134. Pursuant to the FLSA, 29 U.S.C. § 206, Plaintiffs and FLSA Collective Plaintiffs were entitled to be compensated at a rate of $7.25 per hour.

135. Pursuant to the FLSA, 29 U.S.C. §§ 206, 207, Defendants failed to pay Plaintiff and FLSA Collective Members the minimum wage for all hours worked up to forty (40) per workweek, and overtime wages for work performed in excess of forty hours per week, to which they are entitled under the FLSA.

136. Defendants were not allowed to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. § 201, *et seq.*

137. Defendants unlawfully deducted payments from Plaintiff and FLSA Collective Plaintiffs' wages, which were for the primary benefit of Defendants, causing their pay to fall below the minimum wage in violation of the FLSA.

138. Defendants unlawfully kept a portion of tips that Plaintiff and Tipped FLSA Collective Members earned from customers, in violation of the FLSA, 29 U.S.C. § 203(m), unlawfully charging house fee on all earnings, including gratuities.

139. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Members of their rights under the FLSA.

140. Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Members the lawful minimum wage and overtime wages for all hours worked when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and FLSA Collective Members.

141. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

142. As a result of Defendants' willful violations of the FLSA, Plaintiff and FLSA Collective Members have suffered damages by being denied minimum wage, overtime wages and tips in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

143. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Members and the actual compensation paid to Plaintiff and FLSA Collective Members should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**

144. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

145. At all times relevant, Plaintiffs and the Class have been employees of Defendants, and Defendants have been employers of Plaintiffs and the Class within the meaning of the NYLL §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

146. Defendants failed to pay Plaintiffs and Class Members the minimum wage to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

147. Pursuant to the NYLL, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, Defendants are required to pay Plaintiffs and the Class the full minimum wage at a rate of $16.00 per hour for all hours worked from January 1, 2024 through December 31, 2024, and $16.50 per hour for all hours worked from January 1, 2025 through the present.

148. Defendants were not allowed to avail themselves of the New York tipped minimum wage rate under the NYLL.

149. Defendants failed to pay Plaintiffs and Class Members overtime compensation at one and one-half times their regular rate of pay for all hours worked in excess of forty (40) in a workweek.

150. NYLL § 193 prohibits employers from deducting from employees' wages unless expressly authorized in writing, provided such authorization is voluntary and only given following receipt by the employee of written notice of all terms and conditions of the payment and/or its benefits and the details of the manner in which deductions will be made.

151. Defendants made deductions from Plaintiffs' wages and gratuities without first obtaining express written authorization in violation of the NYLL.

152. Defendants have failed to pay Plaintiffs and the Class the spread-of-hours premium for each day that the length of the interval between the beginning and end of their workday was greater than ten (10) hours.

153. Defendants unlawfully retained part of the gratuities received by Plaintiffs and Class Members in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

154. Defendants failed to furnish Plaintiffs and the Class with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

155. Defendants failed to furnish Plaintiffs and the Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

156. Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiffs and the Class as required by the NYLL and the supporting New York State Department of Labor Regulations.

157. Defendants failed to keep, make, preserve, maintain, and furnish accurate records of the amounts of tips earned by Plaintiffs and Class Members as required by the NYLL and the supporting New York State Department of Labor Regulations.

158. Defendants failed to properly disclose or apprise Plaintiffs and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

159. As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Class are entitled to recover from Defendants their unpaid wages, unpaid minimum wages, unpaid overtime wages, unpaid wages for off-the-clock work, unpaid spread-of-hours premiums, unlawfully retained gratuities, unlawful deductions, liquidated damages, reasonable attorneys' fees and costs, interest, and other compensation in accordance with the NYLL.

**COUNT III**

**DISCRIMINATION IN VIOLATION OF THE NYSHRL**

160. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

155. At all times relevant, Defendants have been employers of Plaintiffs, and/or aiders and abettors, within the meaning of the NYSHRL.

156. Plaintiffs are Black women and are members of protected classes within the meaning of the NYSHRL based on their race and color.

157. Plaintiffs were qualified for their positions and performed their duties in a satisfactory manner.

158. Defendants discriminated against Plaintiffs on the basis of their race and color by subjecting them to different terms, conditions, and privileges of employment than similarly situated non-Black employees.

159. Defendants, through their managers, supervisors, employees, and/or agents, subjected Plaintiffs to discriminatory comments and appearance requirements concerning their hair, braids, and natural hairstyles.

160. Defendants did not impose the same appearance requirements on similarly situated White and Hispanic employees.

161. Defendants further treated Plaintiffs less favorably than similarly situated non-Black employees with respect to workplace rules, discipline, supervision, and other terms and conditions of employment.

162. Defendants' discriminatory acts were committed because of Plaintiffs' race and color.

163. The Individual Defendant is liable because he personally participated in, aided and abetted, incited, compelled, and/or coerced the discriminatory conduct alleged herein.

164. As a result of Defendants' unlawful discriminatory conduct, Plaintiffs suffered lost wages, emotional distress, humiliation, embarrassment, and other damages.

**COUNT IV**
**RETALIATION IN VIOLATION OF THE NYSHRL**
(Plaintiff Rose Michel Against Defendants)

165. Plaintiff Michel realleges and incorporates by reference all allegations in all preceding paragraphs.

166. At all times relevant, Defendants have been employers of Plaintiff Michel within the meaning of the NYSHRL.

167. Plaintiff Michel engaged in protected activity when she complained about and opposed Defendants' discriminatory treatment of her.

168. Defendants knew that Plaintiff Michel complained about and opposed discriminatory treatment.

169. After Plaintiff Michel complained that she was being singled out and treated differently than similarly situated non-Black employees, Defendants dismissed her concerns.

170. Approximately one week after Plaintiff Michel complained about Defendants' discriminatory treatment, Defendants terminated her employment.

171. Defendants terminated Plaintiff Michel's employment because she complained about and opposed discriminatory treatment.

172. Defendants' retaliatory acts were reasonably likely to deter Plaintiff Michel and other employees from complaining about discrimination or otherwise opposing unlawful discriminatory practices.

173. The Individual Defendant is liable because he personally participated in, aided and abetted, incited, compelled, and/or coerced the retaliatory conduct alleged herein.

174. As a result of Defendants' unlawful retaliatory conduct, Plaintiff Michel suffered lost wages, emotional distress, humiliation, embarrassment, and other damages.

**COUNT V**

**DISCRIMINATION IN VIOLATION OF THE NYCHRL**

175. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

176. At all times relevant, Defendants have been employers of Plaintiffs within the meaning of the NYCHRL.

177. Plaintiffs are Black women and are members of protected classes within the meaning of the NYCHRL based on their race and color.

178. Defendants discriminated against Plaintiffs on the basis of their race and color by treating them less well than similarly situated non-Black employees.

179. Defendants, through their managers, supervisors, employees, and/or agents, subjected Plaintiffs to discriminatory comments and appearance requirements concerning their hair, braids, and natural hairstyles.

180. Defendants did not impose the same appearance requirements on similarly situated White and Hispanic employees.

181. Defendants further treated Plaintiffs less favorably than similarly situated non-Black employees with respect to workplace rules, discipline, supervision, and other terms and conditions of employment.

182. Plaintiffs' race and color were motivating factors in Defendants' discriminatory treatment of Plaintiffs.

183. The Individual Defendant is liable because he personally participated in, aided and abetted, incited, compelled, and/or coerced the discriminatory conduct alleged herein.

184. As a result of Defendants' unlawful discriminatory conduct, Plaintiffs suffered lost wages, emotional distress, humiliation, embarrassment, and other damages.

## COUNT VI

## RETALIATION IN VIOLATION OF THE NYCHRL

(Plaintiff Rose Michel Against Defendants)

185. Plaintiff Michel realleges and incorporates by reference all allegations in all preceding paragraphs.

186. At all times relevant, Defendants have been employers of Plaintiff Michel within the meaning of the NYCHRL.

187. Plaintiff Michel engaged in protected activity when she complained about and opposed Defendants' discriminatory treatment of her.

188. Defendants knew that Plaintiff Michel complained about and opposed discriminatory treatment.

189. After Plaintiff Michel complained that she was being singled out and treated differently than similarly situated non-Black employees, Defendants dismissed her concerns.

190. Approximately one week after Plaintiff Michel complained about Defendants' discriminatory treatment, Defendants terminated her employment.

191. Defendants terminated Plaintiff Michel's employment because she complained about and opposed discriminatory treatment.

192. Defendants' retaliatory acts were reasonably likely to deter Plaintiff Michel and other employees from complaining about discrimination or otherwise opposing unlawful discriminatory practices.

193. The Individual Defendant is liable because he personally participated in, aided and abetted, incited, compelled, and/or coerced the retaliatory conduct alleged herein.

194. As a result of Defendants' unlawful retaliatory conduct, Plaintiff Michel suffered lost wages, emotional distress, humiliation, embarrassment, and other damages.

**COUNT VII**
**FAILURE TO PROVIDE A REASONABLE ACCOMMODATION IN VIOLATION OF THE NYSHRL**
(Plaintiff Mercheley Petit-Frere Against Defendants)

195. Plaintiff Petit-Frere realleges and incorporates by reference all allegations in all preceding paragraphs.

196. At all times relevant, Defendants have been employers of Plaintiff Petit-Frere within the meaning of the NYSHRL.

197. Plaintiff Petit-Frere suffered from a disability and/or impairment within the meaning of the NYSHRL.

198. Defendants knew or should have known that Plaintiff Petit-Frere required a reasonable accommodation.

199. Plaintiff Petit-Frere requested a brief leave of absence of approximately one to two weeks to grieve, address her mental health, and seek treatment.

200. Plaintiff Petit-Frere's requested accommodation was reasonable and would not have imposed an undue hardship on Defendants.

201. Defendants failed and refused to provide Plaintiff Petit-Frere with a reasonable accommodation.

202. Defendants further failed to engage in a good faith interactive process with Plaintiff Petit-Frere concerning her need for a reasonable accommodation.

203. Instead of providing Plaintiff Petit-Frere with a reasonable accommodation, Defendants terminated her employment.

204. The Individual Defendant is liable because he personally participated in, aided and abetted, incited, compelled, and/or coerced the unlawful conduct alleged herein.

205. As a result of Defendants' failure to provide Plaintiff Petit-Frere with a reasonable accommodation, Plaintiff Petit-Frere suffered lost wages, emotional distress, humiliation, embarrassment, and other damages.

## COUNT VIII

## FAILURE TO PROVIDE A REASONABLE ACCOMMODATION AND RETALIATION IN VIOLATION OF THE NYCHRL

(Plaintiff Mercheley Petit-Frere Against Defendants)

206. Plaintiff Petit-Frere realleges and incorporates by reference all allegations in all preceding paragraphs.

207. At all times relevant, Defendants have been employers of Plaintiff Petit-Frere within the meaning of the NYCHRL.

208. Plaintiff Petit-Frere suffered from a disability and/or impairment within the meaning of the NYCHRL.

209. Defendants knew or should have known that Plaintiff Petit-Frere required a reasonable accommodation.

210. Plaintiff Petit-Frere requested a brief leave of absence of approximately one to two weeks to grieve, address her mental health, and seek treatment.

211. Plaintiff Petit-Frere's requested accommodation was reasonable and would have enabled her to satisfy the essential requisites of her job.

212. Defendants failed and refused to provide Plaintiff Petit-Frere with a reasonable accommodation.

213. Defendants further failed to engage in a cooperative dialogue with Plaintiff Petit-Frere concerning her need for a reasonable accommodation.

214. Defendants did not provide Plaintiff Petit-Frere with any written final determination identifying any accommodation granted or denied.

215. Instead of providing Plaintiff Petit-Frere with a reasonable accommodation, Defendants terminated her employment in retaliation for her request.

216. The Individual Defendant is liable because he personally participated in, aided and abetted, incited, compelled, and/or coerced the unlawful conduct alleged herein.

217. As a result of Defendants' failure to provide Plaintiff Petit-Frere with a reasonable accommodation and retaliatory conduct, Plaintiff Petit-Frere suffered lost wages, emotional distress, humiliation, embarrassment, and other damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself, FLSA Collective Members and the Class, respectfully requests that this Court grant the following relief:

a. Designation of this action as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of Plaintiffs and the FLSA Collective Members;

b. Issuance of court-authorized notice to similarly situated employees regarding the pendency of this action and their right to opt in pursuant to the FLSA;

c. Certification of this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of Plaintiffs and the Class Members;

d. Designation of Plaintiffs as representatives of the Class;

e. Designation of Plaintiffs' counsel as Class Counsel;

f. A declaratory judgment that Defendants' practices complained of herein are unlawful under the FLSA, NYLL, NYSHRL, and NYCHRL;

g. An award of unpaid minimum wages due under the FLSA and NYLL;

h. An award of unpaid overtime wages due under the FLSA and NYLL;

i. An award of unpaid wages for all hours worked, including off-the-clock work, due under the FLSA and NYLL;

j. An award of unpaid spread-of-hours premiums due under the NYLL;

k. An award of unlawfully retained tips and gratuities due under the FLSA and NYLL;

l. An award of damages for unlawful deductions, kickbacks, house fees, shortages, penalties, and other improper charges imposed on Plaintiffs, FLSA Collective Members, and Class Members, due under the FLSA and NYLL;

m. An award of statutory damages and penalties for Defendants' failure to provide proper wage notices as required by the NYLL;

n. An award of statutory damages and penalties for Defendants' failure to provide proper wage statements as required by the NYLL;

o. An award of liquidated damages under the FLSA;

p. An award of liquidated damages under the NYLL;

q. An award of compensatory damages to Plaintiffs for Defendants' discrimination, retaliation, failure to accommodate, failure to engage in the interactive process and/or cooperative dialogue, and other unlawful conduct under the NYSHRL and NYCHRL;

r. An award of back pay, front pay, lost wages, lost benefits, and other economic damages to Plaintiffs resulting from Defendants' unlawful discrimination, retaliation, failure to accommodate, and termination of their employment;

s. An award of damages to Plaintiffs for emotional distress, humiliation, embarrassment, mental anguish, reputational harm, and other non-economic injuries resulting from Defendants' unlawful conduct;

t. An award of punitive damages against Defendants to the fullest extent permitted by law, including under the NYCHRL;

u. An award of civil penalties, statutory penalties, and any other penalties available under the NYSHRL and NYCHRL;

v. An order requiring Defendants to provide all equitable and affirmative relief necessary to remedy the effects of their unlawful conduct;

w. An injunction against Defendants and their officers, agents, successors, employees, representatives, and all persons acting in concert with them, prohibiting them from engaging in the unlawful practices, policies, and patterns alleged herein;

x. Pre-judgment and post-judgment interest;

y. An award of reasonable attorneys' fees and costs pursuant to the FLSA, NYLL, NYSHRL, NYCHRL, and any other applicable law; and

z. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: September 21, 2026

Respectfully submitted,

**BROWN, KWON & LAM LLP**

By: *_/s/ William Brown_*

William Brown, Esq. (WB6828)
521 5th Avenue, Suite 1744
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
wbrown@bkllawyers.com
*Attorneys for Plaintiff*

**<u>CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT</u>**

I, MERCHELEY PETIT-FRERE, hereby consent to be a party plaintiff pursuant to 29 U.S.C. § 216(b), in an action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, against LIV RESTAURANT LLC d/b/a Ten's Cabaret, and EDGAR MCLAUGHLIN and/or related entities and individuals to recover unpaid minimum and overtime wages, liquidated damages, and other damages and relief available under the Fair Labor Standards Act.

Signed by:



270CCA4E70274C4...

_______________________________
MERCHELEY PETIT-FRERE

Date: 7/23/2026

**CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT**

I, ROSE MICHEL, hereby consent to be a party plaintiff pursuant to 29 U.S.C. § 216(b), in an action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*., against LIV RESTAURANT LLC d/b/a Ten's Cabaret, and EDGAR MCLAUGHLIN and/or related entities and individuals to recover unpaid minimum and overtime wages, liquidated damages, and other damages and relief available under the Fair Labor Standards Act.

Signed by:
Rose
F7AE16EC81A94B3...
________________________________
ROSE MICHEL

Date: 7/7/2026